# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| IRVIN GOLDENBERG, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 4:22-cv-01238-SEP |
| ) | |
| ST. LUKE'S EPISCOPAL- ) | |
| PRESBYTERIAN HOSPITALS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff's Petition for Approval of Confidential Settlement, Doc. [29], and Defendant's Motion for Sealing Settlement Documents, Doc. [33]. For the reasons set forth below, both motions are granted.

### BACKGROUND

Janet Goldenberg was a patient a Defendant St. Luke's Hospital when she died on December 31, 2021. Plaintiff Irvin Goldenberg, Janet's brother, sued Defendant under Missouri's wrongful death statute, Missouri Revised Statute § 537.080. *See* Doc. [1]. Plaintiff alleges that Janet was injured by and died because of Defendant's employee's negligent care. *Id*. at 3-4. Defendant denied any wrongdoing, Doc. [6], and the parties reached a settlement at an alternative dispute resolution conference. Doc. [24]. The Court held a settlement hearing on December 18, 2023, and the parties presented the Settlement Agreement and supporting evidence. After the hearing, Defendant filed a motion to seal the settlement documents to protect the confidentiality of the agreement. Doc. [33].

### DISCUSSION

**I.   Motion to Seal**

"There is a common-law right of access to judicial records." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013). When evaluating motions to seal, the "court must first decide if the documents in question are 'judicial records,' and if so, must next consider whether the party seeking to prevent disclosure has overcome the common-law right of access." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (quoting *IDT Corp.*, 709 F.3d at 1222-23). "The presumption of public access to judicial records may be overcome if the party seeking to keep

the records under seal provides compelling reasons for doing so." *Id*. at 511 (citing *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006)). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and [the] resultant value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).

Defendant moves to seal the Settlement Agreement and a letter discussing the settlement apportionment. Doc. [34]. Defendant gives three reasons for sealing: (1) the settlement is the product of confidential mediation, (2) there is no public value in disclosing the terms of the settlement, and (3) the materials implicate Plaintiff's privacy interests. *Id.* at 1-2.

Good cause exists to keep the settlement amount and apportionment information under seal. "[W]hen the substantial benefits of the settlements are balanced against the harm of sealing the documents from public view . . . the interests of justice weigh in favor of . . . allowing [the parties' settlement agreement] to remain filed under seal." *Williams v. BPV Mkt. Place Invs., L.L.C.*, 2014 WL 5017934, at *2 (E.D. Mo. Oct. 7, 2014). The Settlement Agreement, effected through mediation, might not have been achieved if the parties had believed that the terms would become public. Defendant explains that "allowing the documents to be filed without sealing defeats the purpose of both alternate dispute resolution and of the mediation in this specific case." Doc. [34] at 2. The alternative dispute resolution process is a critical tool to aid parties in settling their claims, and settlements are often possible only if the terms are kept confidential. The public has an interest in encouraging settlements, which require fewer public resources than litigation.

Moreover, the information available on the docket, such as the Complaint, Doc. [1], Answer, Doc. [6], and Petition for Approval of Confidential Settlement, Doc. [29], provides the public with enough information to understand the nature of Plaintiff's claims and Defendant's responses. And the Court held a public settlement hearing on December 18, 2023, where the parties provided more details of the settlement process and reasons for the settlement allocation. *See* Doc. [32]. All that publicly available information allows the public to monitor the Court's work and understand why it approved the settlement.

The parties have already filed redacted versions of the sealed documents on the public docket. Doc. [35]. In that filing, the parties redacted every term of the Settlement Agreement. *Id.* at 3-5. The reasons discussed above warrant sealing of the overall settlement amount and

2

allocation, but they do not apply to every term of the agreement. Absent compelling reasons extending to other terms, the Court has generally limited sealing to the settlement amount and terms of allocation. *See Hanna v. Sunrise Senior Living Mgmt., Inc.*, 2022 WL 2867069, at *2 (E.D. Mo. July 21, 2022) ("[T]he parties have minimized any intrusion upon the public's interest in transparency by asking to seal only the amount of their settlement. All other terms of the agreement remain accessible on the public docket."); *see also Harmon v. Preferred Fam. Healthcare, Inc.*, No. 2:21-cv-00026-SEP (E.D. Mo. June 23, 2023), Doc. [112]; *Bradley v. Bridgeton Operations, LLC*, No. 4:22-cv-00189-SEP (E.D. Mo. Feb. 6, 2023), Doc. [49]. The Court sees no basis for departing from that practice here. Therefore, the parties must file either a new copy of the Settlement Agreement redacting only those terms from which the total settlement amount could be deduced *or* a renewed motion for sealing that provides compelling reasons for sealing every term of the agreement.

The redactions to the apportionment document are appropriate. The public has a significant interest in knowing what proportion of the settlement is apportioned for attorneys' fees, while the parties' interests in keeping that information private are less substantial. Courts must regularly assess the fairness of attorneys' fee arrangements, which would be made considerably more difficult if such apportionments were routinely kept under seal. The redacted version of the apportionment document discloses that 40% of the settlement goes to attorneys' fees, while properly redacting the dollar amounts, which would enable calculation of the total settlement amount. Doc. [35] at 11.

## II.  Motion for Approval of Wrongful Death Settlement

Because Plaintiff brings a claim for wrongful death under Missouri Revised Statute § 537.080, any settlement agreement must satisfy § 537.095. That section first requires plaintiffs to "diligently attempt[] to notify all parties having a cause of action under section 537.080." *Id.* § 537.095.1. Missouri's wrongful death statute authorizes recovery by two classes of beneficiaries. Class 1 includes "the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive." *Id.* § 537.080.1. "If there be no persons in class (1) entitled to bring the action," then "the brother or sister of the deceased, or their descendants" can bring the claim. *Id.* § 537.080.2. The Complaint states that Janet Goldenberg had no living spouse, children, or parents, Doc. [1] ¶ 3, and Plaintiff Irvin Goldenberg testified to that fact at the

3

settlement hearing. Plaintiff also testified that there are seven Class 2 beneficiaries, Janet's seven siblings. Plaintiff explained that all the siblings were involved in the case from the start, regularly updated on the case through phone calls and family video conferences, informed of the hearing, and given the opportunity to attend. All seven of the siblings also signed the Settlement Agreement. Doc. [35] at 6-10. Based on that evidence, Plaintiff satisfied § 537.095's notification requirement.

Wrongful death plaintiffs must present the proposed settlement agreement for Court approval. Mo. Rev. Stat. § 537.095. The statute "does not identify a standard for 'approval' of the amount of a settlement," but courts have considered what is fair and just under the factors enumerated in § 537.090,[1] weighted according to "the likelihood of success if the case were to be tried." *Johnson v. City of Hazelwood*, 2017 WL 492822, at *2 (E.D. Mo. Feb. 7, 2017); *see, e.g.*, *Stage ex rel. Stage v. John J. Pershing VA Med. Ctr.*, 2019 WL 7578479 (E.D. Mo. Jan. 18, 2019).

The parties have agreed to settle the claims in this case for a confidential amount, and the settlement will be split equally among the seven Class 2 beneficiaries. At the hearing, Plaintiff, a medical doctor, testified that he was heavily involved in case development and settlement negotiations. Plaintiff also explained that he regularly coordinated with the other Class 2 beneficiaries as the case progressed to settlement. Plaintiff and the other Class 2 beneficiaries all agreed to the settlement amount, and there is no evidence to suggest that the amount is unfair. *See Johnson*, 2017 WL 492822, at *4 (deferred to opinion of plaintiffs "with the most to gain or lose by agreeing to the settlement" to determine whether settlement was fair and just). Nor is there any indication that the settlement distribution is unfair. The Class 2 beneficiaries are all Janet's siblings, and Plaintiff testified at the hearing that they all helped care for Janet and shared equally close relationships with her. Equal distribution is also consistent with Missouri's general laws of descent. *See* Mo. Rev. Stat. § 474.010.

The settlement documents also detail the amounts to be distributed to Plaintiff's counsel. Plaintiff's Exhibit 3 from the settlement hearing is a letter from Plaintiff's counsel to Plaintiff describing the attorney's fees and costs. Doc. [35] at 11. That agreement assigns to Plaintiff's

---

[1] Section 537.090 provides for damages that are "fair and just . . . having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of" the class of plaintiffs.

4

counsel 40% of any settlement proceeds. *Id.* At the settlement hearing Plaintiff testified that he was satisfied with his counsel's performance. The case was filed over one year ago, and Plaintiff's counsel told the Court that he conducted eight depositions, in addition to his other work on the case, which helped facilitate the Settlement Agreement. The fee arrangement is also consistent with other fee agreements approved by the Court. *See, e.g.*, *Little v. Beauvais Manor Healthcare & Rehab Ctr., LLC*, 2022 WL 2176860, at *4 (E.D. Mo. June 16, 2022); *Long v. Gyrus ACMI, Inc.*, 2021 WL 1985054, at *3 (E.D. Mo. May 18, 2021); *Stage*, 2019 WL 7578479, at *2.

For the foregoing reasons, the Court approves the Settlement Agreement.

Accordingly,

**IT IS HEREBY ORDERED** Defendant's Motion for Sealing Settlement Documents, Doc. [33], is **GRANTED**. The unredacted documents, Docs. [34-1] and [34-2], are authorized to be filed under seal and shall remain under seal indefinitely.

**IT IS FURTHER ORDERED** that by **February 6, 2024**, the parties shall file a redacted copy of the Settlement Agreement that omits only those terms from which the total settlement amount could be deduced or file a renewed motion for sealing that provides compelling reasons for sealing every term of the agreement.

**IT IS FURTHER ORDERED** that Plaintiff's Petition for Approval of Confidential Settlement, Doc. [29], is **GRANTED**.

**IT IS FURTHER ORDERED** that the cause of action and all claims for injuries, damages, and losses against Defendant be settled for [redacted] inclusive of attorneys' fees and costs, the consideration agreed upon by the parties.

**IT IS FINALLY ORDERED** that upon the filing of redacted documents in accordance with this Order or the Court's ruling on a renewed motion for sealing, all claims in this action shall be **DISMISSED WITH PREJUDICE**, and the Court will enter a separate Order to that effect.

Dated this 30th day of January, 2024.

                                                        SARAH E. PITLYK
                                                        UNITED STATES DISTRICT JUDGE